UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERIC DESHAWN FLOWERS,

                Petitioner,

                          Case No. 1:18-cv-787

v.

                          Honorable Paul L. Maloney

TONY TRIERWEILER,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Eric Deshawn Flowers is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan.  On March 29, 2016, Petitioner pleaded guilty in the Kent County Circuit Court to armed robbery, Mich. Comp. Laws § 750.529, and felony firearm, Mich. Comp. Laws § 750.227b.  On May 12, 2016, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to a prison term of 35 to 70 years for the armed robbery offense consecutive to a prison term of 2 years for the felony firearm offense.

Those prison terms, in turn, were consecutive to the completion of a 1 to 4-year prison term for falsely reporting a felony, Mich. Comp. Laws § 750.411a(1)(b), a crime for which Petitioner was on parole when he committed the armed robbery.  The MDOC reports that Petitioner's earliest release date is May 11, 2053, and his maximum discharge date is October 6, 2088, suggesting that Petitioner had a little less than six months remaining on his "false report" sentence when he was sentenced for the armed robbery.[1]

The armed robbery for which Petitioner was convicted occurred on October 18, 2015.  *See* Plea Hr'g Tr., pp. 12-14, *State of Michigan v. Flowers*, No. 15-10258-FH (Kent Cty. Cir. Ct. Mar. 29, 2016).  Petitioner and an accomplice drove up to a Subway restaurant on Plainfield Avenue in Grand Rapids, Michigan.  *Id.*  Petitioner entered with a gun and robbed the clerk.  *Id.*

---

[1] *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=626678.  This Court takes judicial notice of the information provided by a search of the MDOC Offender Tracking Information System website regarding Petitioner. *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

The Plainfield Avenue robbery case proceeded through the trial court in parallel with another case wherein Petitioner was charged with an armed robbery on Bridge Street in Grand Rapids, Michigan. *Id.*, at p. 8. Because of Petitioner's status as a habitual offender, if he were convicted of one of the armed robbery crimes the statute required a minimum sentence of 25 years. Mich. Comp. Laws § 769.12(1)(a) and (6)(a)(iii). If he were convicted of both, and two felony firearms charges, and if the court were to sentence him consecutively, Petitioner might be facing a mandatory statutory minimum sentence of 54 years.

Against that backdrop, on March 29, 2016, the prosecutor offered Petitioner the opportunity to enter a plea of guilty to one charge of armed robbery and one charge of felony firearm. *See* Plea Hr'g Tr., pp. 4-5, *State of Michigan v. Flowers*, No. 15-10258-FH (Kent Cty. Cir. Ct. Mar. 29, 2016). In exchange for that plea, the prosecutor would waive the 25-year minimum and dismiss the charges relating to the Bridge Street robbery. *Id.* The prosecutor, Petitioner's counsel, and the court indicated to Petitioner that the sentencing guidelines for the armed robbery charge appeared to yield a minimum sentence range of 135 months (11 years, 3 months) to 450 months (37 years, 6 months), which would be consecutive to the 2-year sentence on the felony firearm. *Id.* Petitioner acknowledged that he understood. *Id.*, pp. 4-11. He entered his plea of guilty to the two charges. *Id.*, pp. 11-13.

On May 12, 2016, the trial court sentenced Petitioner. *See* Sentencing Hr'g Tr., *State of Michigan v. Flowers*, No. 15-10258-FH (Kent Cty. Cir. Ct. May 12, 2016). Petitioner was represented at the sentencing hearing by Attorney Judith Raskiewicz, who appeared in place of Petitioner's appointed counsel Michael Liquigli. Ms. Raskiewicz reported that she had reviewed the presentence investigation report and spoken with Mr. Liquigli about it. *Id.* at p. 3. The resulting guidelines were slightly lower than the guideline range that the parties had estimated at

the time of the plea.[2]  Ms. Raskiewicz recognized that the guidelines permitted a significant

minimum sentence, but she asked that the trial court stay on the lower end of the guidelines because

Petitioner was so young.  *Id*.  The trial court asked Petitioner if he had anything to add.  *Id*.  He

declined.  *Id*. at p. 4.  The court sentenced Petitioner as described above.

Petitioner, through his appellate counsel Ann Prater, moved to withdraw his plea

claiming that the plea was coerced and the prosecutor's promises were illusory.  (Mot. to Withdraw

Plea, ECF No. 1-1, PageID.23.)   The trial court denied Petitioner's motion by order entered

December 5, 2016.  (Kent Cty. Cir. Ct. Ord., ECF No. 1-1, PageID.26-27.)  The court noted that

Petitioner acknowledged on the record that he understood the terms of the plea bargain, including

the possibility that his minimum sentence might be as high as 37 years, and that he had not been

offered any incentives other than elimination of the 25-year mandatory, statutory minimum and

dismissal of the second robbery case.  (*Id*., PageID.26.)  The court also rejected Petitioner's claim

that the prosecutor's promises were illusory.  The court noted that Petitioner's bargain made it

possible that he might receive a sentence as low as 11 years for armed robbery.  (*Id*., PageID.27.)

Moreover, he entirely avoided a sentence for the Bridge Street robbery.  (*Id*.)

After the trial court denied his motion, Petitioner, with the assistance of counsel,

filed an application for leave to appeal in the Michigan Court of Appeals.  He raised the same issue

he had raised in his motion:  he should be permitted to withdraw his plea because it was not

knowing, intelligent, and voluntary and the prosecutor's promises were illusory.  (Pet'r's Appl. for

Leave to Appeal, ECF No. 1-1, PageID.30.)  On February 10, 2017, the court of appeals denied

leave for lack of merit in the grounds presented.  (Mich. Ct. App. Order, ECF No. 1-1, PageID.41.)

---

[2] Petitioner's counsel had estimated the guidelines at 135 to 450 months at the time of the plea.  The guidelines were
ultimately scored at 126 to 420 months.  (Mot. to Withdraw Plea, ECF No. 1-1, PageID.23.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court. He raised the issue he had raised in the court of appeals and a few new issues, paraphrased as follows:

II.     Petitioner should be permitted to withdraw the plea because it was coerced.

III.    The plea transcripts do not accurately reflect the court proceedings.

IV.     Petitioner's counsel rendered ineffective assistance because she was unfamiliar with the case and did not understand that Petitioner had agreed to a sentence of 11 to 37 years, not a minimum sentence of 11 to 37 years.

V.      Petitioner's sentence was excessive and constitutes cruel and unusual punishment.

VI.     The trial court erred when it failed to conduct a *Ginther* hearing following Petitioner request for a new attorney.

VII.    The trial court erred when it participated in the plea negotiations.

(Pet'r's Mich. Supreme Ct. Appl. for Leave to Appeal, ECF No. 1-1, PageID.46-51.) Petitioner filed a supplemental brief adding two additional issues:

VIII.   Petitioner was denied counsel at a critical stage of his criminal proceedings violating his rights under the Sixth Amendment.

IX.     Petitioner's trial counsel rendered ineffective assistance.

(Pet'r's Supp. Br., ECF No. 1-1, PageID.85.) By order entered October 3, 2017, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 1-1, PageID.108.)

On July 13, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on July 13, 2018. (Pet., ECF No. 1, PageID.16.) The petition was received by the Court on July 17, 2018. I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document

is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises 3 grounds for relief, as follows:

I.   The trial court erred in not allowing Petitioner to withdraw his plea due to coercion where due process requires that he be allowed to withdraw his plea.

II.  Petitioner was denied counsel at sentencing violating his 6th Amendment right to counsel and 14th Amendment right to due process.

III. Petitioner was denied the effective assistance of counsel where counsel misinformed Petitioner of the amount of time he would have to serve before he became eligible for parole.

(Pet., ECF No. 1, PageID.5, 9, 11.)

II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by

clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has exhausted his first habeas issue in the state courts. He has presented the issue to every level of the state court system. But, Petitioner has not exhausted his state court remedies with respect to Issues II and III.[3] He raised the issues only in the Michigan

---

[3] An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise Issues II and III. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan

Supreme Court. The petition, therefore, is "mixed." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) ("[M]ixed petitions . . . [are] petitions containing both exhausted and unexhausted claims.").

Petitioner acknowledges that his petition includes unexhausted claims. He has moved to stay these proceedings to permit him to return to the state courts and properly exhaust Issues II and III. (ECF No. 4.) In this instance, a stay is not warranted because Petitioner's unexhausted claims are plainly meritless. *Rhines*, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."). Although the habeas statute bars granting relief on unexhausted claims, it does not bar denying relief on such claims.

IV.     Petitioner's Voluntary and Intelligent Plea

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene based on a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's challenge to his plea, expressed as a challenge to the trial court's improper failure to permit Petitioner to withdraw it, raises a state law claim. There is no federal due process right to seek to withdraw a guilty plea. *Hynes v. Birkett*, 526 F. App'x 515, 521

---

law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy.

(6th Cir. 2013). Michigan Court Rule 6.310 sets out circumstances where the court should permit a defendant to withdraw a plea; however, the rule does not give rise to a federal due process right. *Hynes*, 526 F. App'x at 521.

Although Petitioner's first issue is cast as a state-law claim, it certainly has federal constitutional implications. Petitioner claims that his plea was involuntary and unknowing. "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

To find that a guilty plea is constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Petitioner does not contend he is incompetent and nor does Petitioner contend that he had inadequate notice of the charges against him.

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493

(1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). Petitioner claims that he was coerced into pleading guilty. (Pet., ECF No. 1, PageID.6) ("Petitioner maintains that he was coerced into taking the plea bargain by the Trial Court and his Trial Counsel."). The record does not support his claim.

Generally speaking, it is not coercive to present a criminal defendant with a difficult choice between accepting a plea offer or facing the possibility of more significant consequences without the plea. In fact, this sort of choice is part and parcel of the plea process. As the Supreme Court has stated, "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Thus, for instance, it is not unusual for a prosecutor to agree to drop certain charges in exchange for a defendant's agreement to plead guilty. Such an offer might discourage the defendant from exercising his right to trial, but it is not unduly coercive. The transcript of the plea hearing reveals that Petitioner's plea was not induced by coercion.

Although Petitioner uses the term coercion, his argument focuses on the unknowing nature of his plea. Petitioner claims that he did not understand the consequences of his plea. For a defendant's plea to be valid, he must understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper

advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Petitioner contends that he did not understand the consequences of his plea and that his lack of understanding was counsel's fault. It is noteworthy that this was Petitioner's fifth felony plea. It is also noteworthy that Petitioner's misunderstanding was not the product of a closed-door, off-the-record conversation with his attorney. Petitioner's argument is based entirely on statements made on the record.

A review of Michigan's sentencing scheme provides context for those statements. In Michigan, unless the only punishment prescribed by law for an offense is life imprisonment, the court imposing sentence must fix a minimum term of imprisonment and a maximum term; however, typically, the maximum penalty provided by statute is the maximum term. Mich. Comp. Laws §§ 769.8, 769.9. For some offenses, the maximum penalty is fixed. *See, e.g.*, Mich. Comp. Laws § 750.218(4) (obtaining money of a value of $1000.00 or more, but less than $20,000.00 by use of a false pretense—5 years). For other offenses, such as armed robbery, the maximum penalty is life or any term of years. Mich. Comp. Laws § 750.529. For those offenses, the trial court has discretion to impose a maximum penalty. Mich. Comp. Laws § 769.9(2).

The trial court, in most instances,[4] has discretion to set a minimum sentence. To aid the exercise of the court's discretion, it is required to determine a range of possible minimum sentences using the Michigan sentencing guidelines. *People v. Lockridge*, 870 N.W.2d 502, 520 (Mich. 2015) ("Thus, we hold that trial courts 'must consult those Guidelines and take them into account when sentencing.'"). Moreover, imposition of a minimum sentence that falls within the

---

[4] In the same way the legislature has given the judge discretion to set a maximum sentence for some crimes, it has limited the judge's discretion to set a minimum in others. An example is the 25-year mandatory minimum that would have applied to Petitioner if he had been tried and found guilty as charged. Mich. Comp. Laws § 769.12.

sentencing guidelines range is at least presumptively reasonable. *See, e.g., People v. Schrauben*, 886 N.W.2d 173, 181-182 (Mich. Ct. App. 2016); *People v. Brown*, No. 337540, 2018 WL 1403765 (Mich. Ct. App. Mar. 20, 2018) (citing cases).

The entire exchange regarding Petitioner's sentence is as follows:

THE COURT: In this case, you're charged with armed robbery in two separate cases. Armed robbery is a capital case and meaning that upon conviction, the maximum possible penalty is any term of years up to life in prison.

You're also charged with possession of a firearm in the commission of a felony, which means by law, if convicted, you serve two years on that before you begin the sentence on any other case or any other charge.

And in these cases, you're also charged as a fourth felony offender, which means that if you're convicted of either of these cases, you do two years flat time. At the end of that, you begin to do a sentence for armed robbery, which is a minimum of 25 years.

So you're looking at 27 years guaranteed prison, minimum, if you go to trial and are convicted of either of these cases.

Has an offer been made to Mr. Flowers in these cases?

[Prosecutor]: An offer has been made. And just to point out, your Honor, I'm making this offer today and today only. Past today, there will be no offer. Prior to this date, we hadn't made this offer. [Defense counsel] really pushed this issue and was able to get this offer from me, but I will not make it past today.

That is, the defendant can plead guilty to one file in its entirety, but we've removed the 25-year mandatory minimum. We would make it a regular Supp 4. That gives the Court the range of guidelines between 11 years and 37 years. So the Court can go as low as 11 years. Although, it could go as high as 37 years, but it could have done that before hand. Then we would dismiss the other file in its entirety.

So again, I think it was a hard fought offer by [defense counsel]. We made that offer today and today only.

THE COURT: [Defense counsel], this offer hasn't been made before, had it?

[Defense counsel]: This offer had not been made before, your Honor. I explained to the defendant that it is—the guidelines, as the prosecutor and I figured them out, would be between 135 and 450 months. I may have misspoke to my client. He seems to think I said 13 years as a minimum. What I said was 11 years plus the 2, which would equal 13. I just wanted to be able to explain that to him so he understands that, your Honor.

> THE COURT: Sure. That's why I always have a calculator here on the bench.
>
> [Defense counsel]: I think he was confused with 11 being the bottom end of the guidelines for the armed robbery, but then adding 2 would make it a 13-year minimum as opposed to 11-year. Okay. So you understand all of that?
>
> [Petitioner]: I understand.

Plea Hr'g Tr., pp. 3-5, *State of Michigan v. Flowers*, No. 15-10258-FH (Kent Cty. Cir. Ct. Mar. 29, 2016). Petitioner then consulted with counsel off the record. The transcript indicates the consultation lasted no longer than 4 minutes. Defendant expressed his desire to enter a plea of guilty and the trial court began the plea colloquy. That colloquy included the following statements:

> THE COURT: [Prosecutor] is there a plea offer?
>
> [Prosecutor]: There is, your Honor. The offer is upon successful plea and sentence to Count 1, armed robbery, and Count 2, felony firearm as a regular fourth-felony offender—and we'll get an amended [information] for the Court, but that's under MCL 769.12—we will dismiss the mandatory 25-year sentence under that Supplemental Information, and that is in File 15-10258. And then we would dismiss the other case in its entirety.
>
> THE COURT: Is that your understanding of the entire plea agreement, [defense counsel]?
>
> [Defense counsel]: It is, your Honor.

*Id*., at pp. 8-9. The trial court then reviewed the charges, the maximum penalties, and the rights Petitioner would be giving up by entering his plea. Petitioner voiced his desire to proceed. The court continued:

> THE COURT: Did you hear the plea offer stated by the prosecutor with the approval of your attorney?
>
> [Petitioner]: Yes, your Honor.
>
> THE COURT: Is that the entire plea agreement?
>
> [Petitioner]: Yes, your Honor.
>
> THE COURT: Has anyone promised you anything else?
>
> [Petitioner]: No, your Honor.

THE COURT: Has anyone threatened you to get you to plead?

[Petitioner]: No, your Honor.

THE COURT: Is it your own choice to plead guilty?

[Petitioner]: Yes, your Honor.

*Id.*, at pp. 11-12. Petitioner then described the armed robbery incident. When counsel were satisfied with the court's elicitation of the factual basis for the plea, the court concluded:

THE COURT: Are counsel aware of any promises, threats, or inducements other than that stated for the record?

[Prosecutor]: I'm aware of none, your Honor.

[Defense counsel]: None your Honor.

THE COURT: I'll state for the record I've agreed to nothing with anyone with respect to this plea or possible sentence. I'm convinced the plea is understanding, voluntary and accurate. I find the defendant guilty of the offense to which he's pleading. I accept his plea and direct such plea be entered.

*Id.*, at p. 14.

Petitioner argues that counsel's clarification that the lowest possible minimum sentence would be 13 years, not 11 years, because of the impact of the consecutive felony firearm sentence, stands as the reason for his misunderstanding that a 13 (or 11) year minimum sentence was part of the plea deal. Viewed in isolation, defense counsel's statements might support Petitioner's claim. That support collapses, however, when counsel's statements are considered in the context of the entire plea proceeding.

Petitioner's alleged misunderstanding cannot be reconciled with the prosecutor's initial statement that the plea agreement might yield a sentence as low as 11 years or as high as 37 years. Petitioner's alleged misunderstanding is hopelessly inconsistent with his confirmation that the details of the plea agreement as stated by the prosecutor—details that said nothing about an agreed sentence term—were complete. Seconds later, Petitioner told the court that there were no

15

terms or promises other than the terms stated by the prosecutor. Finally, Petitioner's present contention that he believed he was facing an agreed upon minimum sentence of 13 (or 11) years should have prompted some form of objection when the court closed the proceedings by stating that he had agreed to nothing regarding a possible sentence.

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his present assertion that the prosecutor offered him a specific sentence range in exchange for a plea of guilty. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record, no evidentiary hearing was required. *Id.* at 92.

The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his

statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210. *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy"). The trial court's rejection of Petitioner's motion to withdraw his plea was based on the factual determination that Petitioner's claim of an agreement on the minimum sentence could not be squared with his statements at the plea hearing. That determination is not unreasonable on this record.

Petitioner also contends his plea is constitutionally invalid because the prosecutor's promises were illusory. A plea might also be rendered involuntary or unknowing if it is based on a prosecutor's promise that is illusory. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). It seems unlikely that Petitioner, his counsel, or even the prosecutor expected that, where the prosecutor had waived a mandatory 25-year minimum sentence, the court would sentence Petitioner to a 35-year minimum anyway. However, where a defendant is "fully aware of the direct consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry*, 467 U.S. at 511; *see also McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (where a defendant receives the "bargained for benefit" the promise is not illusory and he is not entitled to habeas relief).

Petitioner cannot say that he was unaware of the consequences of his plea. Petitioner's counsel and the prosecutor informed Petitioner what the guidelines minimum range would be for the armed robbery offense. They even erred on the side of a higher range, estimating the upper end of the range at 37 years, 6 months, when it was eventually scored to yield an upper end of 35 years.

Moreover, a 35-year minimum sentence, though seemingly harsh, did not rob Petitioner of the other benefits of his bargain. For a few weeks, he enjoyed the possibility that his minimum sentence might be significantly shorter than 25 or 35 years. In addition, Petitioner entirely avoided the possibility of an equally onerous consecutive sentence for the Bridge Street robbery. The trial court's determination that the prosecutor's promises were not illusory, therefore, is well-supported by the record.

Finally, Petitioner contends his plea was involuntary and unknowing because his counsel rendered ineffective assistance. A defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel may render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner claims his counsel rendered ineffective assistance because counsel created the misunderstanding that Petitioner was pleading guilty in exchange for an agreement that

his minimum sentence would be 13 (or 11) years. To succeed, Petitioner must satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel; the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* Even if counsel's performance fell short here— even if counsel invited Petitioner's alleged misunderstanding regarding the nature of his bargain— Petitioner cannot show prejudice under the second *Strickland* prong.

Petitioner's self-serving averments that he would not have entered his plea absent a promise that his minimum sentence would be 13 (or 11) years, are unconvincing. If counsel's failings had caused Petitioner any misperceptions regarding the range of outcomes, the trial court

corrected those misperceptions at the plea hearing. *Ramos*, 170 F.3d at 565 ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.") The court very directly disabused Petitioner of any notion that the plea agreement included a promise regarding sentencing. The court made the prosecutor recite all the promises that were part of the plea agreement. The court made defense counsel and Petitioner confirm those promises and acknowledge that there were no others. Petitioner is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker*, 781 F.2d at 90). To hold otherwise would "[render] the plea process meaningless . . . ." *Id.* Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court. *Id.* Accordingly, even if counsel made the professionally unreasonable statements that Petitioner attributes to him, Petitioner has failed to show that he suffered any prejudice as a result.

Petitioner's challenges to the knowing and voluntary nature of his plea are without merit. The state court's rejection of those challenges is supported by the record, consistent with clearly established federal law, and entitled to deference. Petitioner is not entitled to habeas relief on his claims related to his plea.

## V.  Ineffective Assistance of Counsel at Sentencing

Petitioner also attacks the performance of his counsel at sentencing. The essence of Petitioner's challenge is that counsel failed to argue that the plea agreement included a minimum sentence of 13 (or 11) years. To prevail on his claim, Petitioner must satisfy the two-prong *Strickland* standard. Here, Petitioner falls short on both prongs.

Petitioner offers the general observation that Judith Raskiewicz was unfamiliar with his case. The record suggests otherwise. Ms. Raskiewicz reported that she had reviewed the presentence investigation report and discussed the matter with Michael Liquigli. Critically, the

only specific failure that Petitioner alleges resulted from Ms. Raskiewicz's purported lack of familiarity was her failure to object to a sentence that was supposedly inconsistent with the bargained-for sentence.

The trial court and this Court have concluded that Petitioner's claim that there was a minimum sentence term in the plea bargain agreement is meritless. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, counsel's decision to forego arguing the existence of a bargained-for minimum sentence term cannot be ineffective assistance. Petitioner is not entitled to habeas relief on this claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so

lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a Judgment and Order consistent with this Opinion.


Dated:  August 13, 2018                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge